**Richard K. HONAMAN, Jr., Appellant**

v.

**TOWNSHIP OF LOWER MERION.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 2010.

Decided Jan. 31, 2011.

---

Craig J. Staudenmaier, Harrisburg, for appellant.

Gilbert P. High, Jr., Norristown, for appellee.

BEFORE: McGINLEY, Judge, and McCULLOUGH, Judge, and KELLEY, Senior Judge.

OPINION BY Judge McGINLEY.

Richard K. Honaman, Jr. (Requester)[1] disputes the legal correctness of an order of the Court of Common Pleas of Montgomery County (trial court) that reversed the decision of the Pennsylvania Office of Open Records (OOR) which required Lower Merion Township (Township) to provide copies of real estate tax records to Requester pursuant to the Right–to–Know Law (RTKL)[2]

On April 7, 2009, the Township sought review of the determination by the OOR and alleged:

> 2. On or about January 6, 2009, the Respondent [Requester] ... filed a number of right-to-know requests via separate emails seeking Year 2008 payment records of county, township and school taxes as well as solid waste/waste generation and sewer rent bills for 18 specific addresses in the Township of Lower Merion. After timely seeking an additional period to gain the Township solicitor's advise [sic] with respect to the

---

1. Requester filed this appeal on behalf of Signature Information Solutions, LLC (Signature).

2. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104. The RTKL repealed the former Right–to–Know Law, Act of June 21, 1957, P.L. 390, *as amended, formerly* 65 P.S. §§ 66.1–66.4.

request, the Township responded by letter dated January 22, 2009 . . . .

3. The Township asserted in its response that " . . . *it has been determined that the real estate records you have requested do not fall under the purview of the Township. These payment records are kept by the Lower Merion Tax Collector's office, which is not a municipal agency with respect to the collection of real estate taxes.* The Township government does not have authority to provide these records." (emphasis added).

4. While denying the request for real estate tax records of the Township, County and School District maintained in the office of the Tax Collector and not maintained by the Township, the *Township did provide the solid waste/waste generation and sewer rent information requested by the Respondent [Requestor] as these records are kept in the Township's Finance Department.* (emphasis added).

5. Respondent then filed an appeal to the Office of Open Records on February 4, 2009 . . . . On March 29, 2009, the Office of Open Records filed its Final Determination . . . .

6. The Office of Open Records, in arriving at its Final Determination, abused its discretion or committed an error of law as follows:

(1) In granting the appeal and ordering the Township to provide the tax records requested.

. . . .

(3) In determining that while the Lower Merion Township Tax Collector is not an 'agency' and cannot be requested to divulge tax collection records pursuant to the Right–to–Know–Law, *that nevertheless the 'records' of the Tax Collector 'are subject to the law and must be made available.'* (emphasis added).

. . .

(5) In concluding that 'agencies have delegated the task of tax collection to collectors, as a third party . . . .' In fact, the Tax Collector, an independent elected official, is statutorily charged with the task of tax collection by virtue of the provisions of the First Class Township Code, 53 P.S. § 55805. The Township does not 'delegate' to the Tax Collector the power to collect taxes.

(6) . . . The tax records of the Tax Collector cannot be Township records while in the hands of the Tax Collector. They can only become Township records when the Tax Collector provides the Township with those records.

(7) *In concluding that because the Tax Collector provides the Township with monthly reports of accounts issued and taxes received with respect to the Township, that therefore, the Township has all of the Tax Collector's 'records' and therefore those records are 'maintained' by the Township.* In fact, the Tax Collector's monthly reports to the Township do not contain any information concerning the collection of taxes on behalf of the County and School District. Further, the Tax Collector's monthly reports do not contain sufficient details to enable to [sic] the Township to determine whether any particular property owner has paid taxes. (emphasis added).

. . . .

(11) In concluding that the Township was required to cite an exception under the Right–to–Know–Act [sic] § 708(b) [sic] that would exempt it from producing the requested records. In fact, there is no exception in the statute that can be cited where an agency does not possess the records requested. Indeed the statute is silent on how an agency should respond where it does not have the records requested or if the records requested does not exist.

Petition for Review of Final Determination of the Office of Open Records, April 7, 2009, Paragraphs 2–6 at 1–5; Reproduced Record (R.R.) at 20a–24a.

Requester answered and denied that the OOR either abused its discretion or committed an error of law. Answer of Richard K. Honaman, Jr. to the Petition of Final Determination of the Office of Open Records Filed by the Township of Lower Merion, April 27, 2009, Paragraphs 1–6 at 2–9; R.R. at 66a–73a.

At hearing, Samuel T. Adenbaum (Adenbaum), Treasurer and Tax Collector for the Township, explained his duties:

> We give the municipalities a report generally weekly that shows how much money we pay over every week. The report shows the full amount of the tax collected that week, as well as any discounts, offsets or penalty increments. On a monthly basis before the 10th of each month, *we provide each one of the taxing authorities with a summary of what we collected that begins with the beginning balance of what we started with at the beginning of each month, how much we collected, and then how much is still outstanding.* (emphasis added).

Hearing Transcript (H.T.), December 1, 2009, at 21–22; R.R. at 103a–04a.

Adenbaum stated that this tax information is put on a "state-mandated form and we collect that, and we get that information, what we collected, really a combination of the individual tax receipts which are stored in the computer system as well as the summaries of what we collect and pay over in our own accounting system." H.T. at 22; R.R. at 105a. Adenbaum noted that the tax information supplied to the Township did not include the names of the individual property owners as was request-ed by Requester. H.T. at 22; R.R. at 105a.

Additionally, Adenbaum stated that his office received numerous requests about the amount of taxes due and paid on individual properties. "We provide a 1–page summary that shows the township, county and school district taxes on those properties; and our certification is designed as a 4–year certification. We provide information, as you just outlined, that is the payment status of each one of those properties, when it was paid, whether it was paid in discount or penalty, and whether or not the property, any of the prior year taxes were liened." H.T. at 23; R.R. at 106a. Adenbaum charged thirty dollars for the four year certification.

Finally, Adenbaum stated that if the Township requested this information "[m]y response would be that the Township is no different than anybody else, and I would charge the $30 for that information." H.T. at 24; R.R. at 107a.

The trial court made the following pertinent findings of fact:

1. The RTKL obligates a 'local agency' to produce 'records.' The elected Tax Collector of Lower Merion Township operates an independent office and maintains his own tax records. *He does not act under contract with the Township. The LTCL ["Local Tax Collection Law"][3] specifically provides that the Tax Collector is not an "agency" as that term is used in the RTKL.* (emphasis added).

2. *The elected Tax Collector has no obligation to comply with any provision of the RTKL, including the provision of § 507(d) that requires third parties who contract with the Township to give up those records to the Township if needed*

---

3. Act of May 25, 1945, P.L. 1050, *as amended,* 72 P.S. §§ 5511.1–5511.42.

*to respond to a Right–To–Know request. The reasons is [sic] both because he is not subject to the [RTKL] and because he doesn't contract with the Township.* (emphasis added).

3. The Township has no access to the Tax Collector's records apart from his statutory obligation under the LTCL to provide monthly reports on forms approved by the Pennsylvania Department of Revenue and to display (but not provide copies of) unpaid Township tax duplicates to the Township on demand. *There is nothing in the LTCL to suggest that the Township would have access under the provisions of the LTCL to the Tax Collector's records regarding the payment of County or School District taxes.* (emphasis added).

4. *The Tax Collector has declined to provide copies of his records relating to the payment of real estate taxes to the Township except upon payment of a fee of $30.00 for each requested record,* this being the standard fee which the Tax Collector charges for tax certifications. (emphasis added).

5. The RTKL provides access to 'public records'. *The records of the Tax Collector, in the hands of the Tax Collector are not 'records' as that term is defined in the RTKL because the Tax Collector is not an 'agency'* .... (emphasis added).

6. *The records of the Tax Collector, in the hands of the Tax Collector, are not 'public records' as that term is defined in the RTKL because they are neither a 'record' nor are they a 'record' of the Commonwealth or local agency* .... (emphasis added).

7. *Because the Township does not have possession of the tax records requested nor does it have the right to obtain copies of those records without charge, it cannot supply them.* The Township has

stated that it can secure copies of the records based on the offer of the Tax Collector to supply copies at a charge of $30 each, but Respondent [Requester] has not accepted that invitation. (emphasis added).

8. ... *All real estate tax records are in the hands of the Tax Collector who maintains legal custody of them.* (emphasis added).

The Trial Court's Decision, December 4, 2009, Findings of Fact (F.F.) Nos. 1–8 at 1–2.

Requester filed a notice of appeal to this Court on December 30, 2009, and the trial court issued a second opinion and order on March 5, 2010, that addressed Requester's appeal issue:

The narrow issue presented on appeal is whether this Court properly reversed the Final Determination of the ... Office of Open Record's finding that the Township ... was required to provide [Requester] with county, township and school district tax records which the Township does not possess or control.

....

This Appeal lacks merit. Signature [Requester] cannot be permitted to indirectly acquire the Tax Collector's records under the pretext of a Right–to–Know request to the Township when state law specifically exempts the Tax Collector from the provisions of the Right–to–Know Act [RTKL]. *Furthermore, this Court determined that the requested records of the Tax Collector are not in the possession or control of the Township.* Accordingly, Lower Merion Township properly denied this Right–to–Know request. (emphasis added).

Opinion of the Trial Court, March 5, 2010, at 1 and 7.

## I. Did The Township Possess Or Control The Requested Public Real Estate Tax Records That Were In The Possession Of The Tax Collector?

■ Essentially, Requester espouses the rationale employed by the OOR that "[w]hile local tax collectors are not themselves an agency, the tax records that are maintained by that collector remain agency records ... [a]s a result, the records generated and maintained by the tax collector are also maintained by the township."[4] Final Determination of the OOR, March 9, 2009, at 4; R.R. at 45a. Specifically, Requester contends that the LTCL required the Tax Collector to record the receipt of individual taxpayer payments on tax duplicates and to include this information in monthly reports. Therefore, Requester submits that the tax duplicates and monthly reports were "records" because they contained information related to a transaction of a taxing district and were created pursuant to law. Additionally, Requester maintains that these documents were also "public records" because the Township, as an agency, possessed and controlled them.[5]

The Township responds, that first, a tax record that "documents a transaction or an activity of the Lower Merion Tax Collector is neither a 'record' nor a 'public record'" and, that second, the records of the Tax Collector that document the collection of county, township, and school district real estate are not in the possession or control of the Township. Brief of Appellee, Township of Lower Merion, at 8.

Section 102 of the RTKL, 65 P.S. § 67.102, defines the term "record" as:

Information, regardless of physical form or characteristics, *that documents a transaction or activity of an agency* and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film, or sound recording, information stored or *maintained* electronically and a data-processed or image-processed document. (emphasis added).

Section 102 of the RTKL, 65 P.S. § 67.102, defines the term "public record" as:

*A record, including a financial record, of a Commonwealth or local agency that* (emphasis added):

(1) is not exempt under Section 708;

(2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or

(3) is not protected by a privilege.

Section 302(a) of the RTKL, 65 P.S. § 67.303, provides that *"[a] local agency shall provide public records in accordance with this act."* (emphasis added).

Moreover, Section 305(a) of the RTKL, 65 P.S. § 67.305(a), provides:

---

4. Where there is no dispute as to the facts, this Court's review is limited to a determination of whether the trial court abused its discretion, committed an error of law or violated any constitutional rights. *SWB Yankees LLC v. Gretchen Wintermantel,* 999 A.2d 672, 674 n. 2 (Pa.Cmwlth.2010). "The scope of review for a question of law under the [RTKL] is plenary." *Id.* at 674 n. 2, quoting *Stein v. Plymouth Township,* 994 A.2d 1179, 1181 n. 4 (Pa.Cmwlth.2010).

5. Section 708(a)(1) of the RTKL, 65 P.S. § 67.708(a)(1), provides that "[t]he burden of proving that a record of a Commonwealth agency or local agency is exempt from public access shall be on the Commonwealth agency or local agency receiving a request by a preponderance of the evidence."

**(a) General rule.**-*A record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record.* The presumption shall not apply if:

(1) the record is exempt under section 708;

(2) the record is protected by a privilege; or

(3) the record is exempt from disclosure under any other Federal or State law or regulation or judicial order or decree. (emphasis added).

Recently, in *Office of the Budget v. Office of Open Records,* 11 A.3d 618 (Pa. Cmwlth.2011), this Court addressed the issue of "whether an agency must disclose not only records that are in the agency's possession, but also those that are in the agency's custody or control." *Office of the Budget,* 11 A.3d at 620. This Court stated:

Section 305(a) provides that "[a] record in the possession of a . . . local agency shall be presumed to be a public record. . . ." *Therefore, records not in the possession of an agency would not be presumed to be public records.* Section 506(d) [6] provides an exception to this general proposition and gives an example of a public record that is "of" an agency, even where it is not in the agency's possession. . . . As noted above, neither the OOR nor the Requester argue that the Grant Agreement is a contract to perform a governmental function on behalf of Budget. . . .

The plain language of Section 901 does not define any records as public records that must be disclosed. Rather, Section 901 states, in relevant part:

Upon receipt of a written request for access to a record, an agency shall make a good faith effort *to determine if* the record requested is a public record, legislative record or financial record and *whether* the agency has possession, custody or control of the identified record, and *to respond* as promptly as possible under the circumstances existing at the time of the request. 65 P.S. § 67.901. . . . This Court is bound to interpret statutes according to their plain language and, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). By its plain language, Section 901 describes the actions that an agency is obligated to take when it receives a request for a record; *it does not define what records are subject to disclosure under the RTKL.* Pursuant to Section 901, the agency must: first, make a good faith effort to ascertain if the requested record is a public, legislative or financial record; second, determine whether the agency has possession, custody, or control of the record; and third, respond promptly.

*The OOR argues that Section 305 and 901 must be read together and that such a reading creates a presumption that records in an agency's custody or control, not merely in its possession, are public records. However, if Section 901 were read to render records within the custody or control of agencies presumptively public records pursuant to Section 305, Section 506(d) would become*

**6.** Section 506(d)(1) of the RTKL, 65 P.S. § 67.506(d)(1), provides:

A public record that is not in the possession of an agency but is in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the agency, and which directly relates to the governmental function and is not exempt under this act, shall be considered a public record of the agency for purposes of this act.

*mere surplusage, a result that is not countenanced by the rules of statutory construction.* 1 Pa.C.S. § 1921(a) ("*Every statute shall be construed, if possible, to give effect to all its provisions.*") *Moreover, the fact that the Legislature chose to use the terms "custody" and "control" in Section 901, but chose not to include these terms in Section 305 must be recognized in our analysis. Had the Legislature wanted to create the presumption that records in an agency's custody and control, but not in its possession, were public records, it would have included those terms in Section 305, as it did in Section 901, but it did not.*

The OOR also relies upon *Lukes* [7] [*v. Department of Public Welfare*, 976 A.2d 609 (Pa.Cmwlth.2009) ] in support of its position, arguing that *Lukes* supports the *principle that an agency must disclose not only records in its possession, but also records within its control. Lukes* is inapposite to the current case. *Lukes* was decided under the prior Law and turned on the question of what the term "maintained" meant in the definition of "record" under Section 1 of the Prior Law, which defined "record" as "[a]ny document *maintained by an agency,* in any form, whether public or not." *Lukes,* 976 A.2d at 616 (quoting Section 1 of the Prior Law, formerly at 65 P.S. § 66.1).... [8] Concluding that the term "maintained" was ambiguous as used in this definition, this Court turned to various factors provided by 1 Pa.C.S. § 1921(c), including the purpose of the Prior Law, and concluded that

"maintained" could mean not only physical possession, but also custody or control. *Lukes,* 976 A.2d at 616–21. *In doing so, this Court articulated an important public policy concern* :

If this Court were to conclude that only documents within an agency's actual physical possession were subject to disclosure, we believe that public records could be shielded from disclosure by placing them in the hands of third parties. We do not believe the General Assembly intended to provide a loophole for agencies to conceal otherwise public records from public view. Despite our preference for a bright line rule that actual possession would provide, such a result is not in the public's interest and is at odds with the purpose of the Law. *Id.* at 618.

Unlike the records in *Lukes ... [t]here is no evidence that Budget is attempting to shield the requested payroll records from disclosure.* Similarly, *while Budget has the right to audit these payroll records, there is no evidence that they have ever been in Budget's possession or that Budget is attempting to play some sort of shell game by shifting these records to a non-governmental body.* Moreover, unlike in *Lukes, this Court is free to consider factors beyond statutory language because the current RTKL is not ambiguous on this point, as discussed above.* (emphasis in original and added).

*Office of the Budget,* 11 A.3d at 621–23. In *Office of the Budget,* this Court concluded that "[t]o adopt the OOR's reasoning

---

7. Requester also cites to *Lukes* in support of his argument that it is "instructive on the issue of an agency's ability to require and/or acquire the production of documents it has a right to possess or control but may be in the hands of a third party." Brief for Richard K. Honaman, Jr. at 17–19.

8. This Court noted in *Office of the Budget* that unlike in the Prior Law, the RTKL does not use the word "maintained" in the present version of the term "public record."

would mean that records of a private company, not in possession of a government agency and not related to a contract to perform a government function, are disclosable to the public if any government agency has a legal right to review those records." *Id.* at 623.

██ This Court's rationale enunciated in *Office of the Budget* is instructive concerning the present controversy. **First,** as in *Office of the Budget,* the Township made a good faith effort to ascertain Whether the requested tax records were public, legislative, or financial records, Whether it had possession, custody, or control of the record, and finally That It responded promptly to the request pursuant to Section 901 of the RTKL. **Second,** as in *Office of the Budget,* the Township did not contract with the Tax Collector to perform a governmental function on its behalf and as a result the requested tax information collected by the Tax Collector cannot be considered in the possession of the Township. **Third,** the Tax Collector does fulfill his statutory duty under the LTCL by providing monthly tax reports to the Township on forms approved by the Pennsylvania Department of Community and Economic Development.[9] These forms included, among other things, the total amount of taxes received, discounts granted, and penalties applied. See Exhibit 6 (Tax Collector's Return Lower Merion Real Estate

2009 Annual Taxes) and Exhibit 7 (Lower Merion Treasurer's Monthly Report For the Month of October 2009 Lower Merion Real Estate) at 1; R.R. at 213a–14a. **Fourth,** the Requestor sought specific tax information concerning the names of twenty-nine property taxpayers showing whether county, township and school district real estate taxes were paid for 2008 and, if so, the amounts and the dates paid. However, this specific tax information was collected by the Tax Collector[10] and remained under his custody and control pursuant to Section 4.3 of LTCL, 72 P.S. § 5511.4c(a).[11] Relevantly, Section 4.3 of the LTCL provides that *"[a] tax collector during the time that he or she holds the office of tax collector shall maintain and have legal custody of tax collection records that are not in the custody of a tax district."* (emphasis added). **Last,** as in *Office of the Budget,* there is no evidence that the Township tried to "shield" the requested tax information. In fact, Adenbaum testified that if the Township "asked for this tax information as to the individual properties in order to respond to a right-to-know request" he would honor the request provided the Township paid the thirty dollar fee. H.T. at 24; R.R. at 107a. The trial court properly determined that the Tax Collector's records were not under the control of the Township and should not be considered "records" or

---

9. This Court notes that if this was the only tax information requested by Requester he would be entitled to these monthly tax reports under the RTKL.

10. Adenbaum stated:

 That's a major component of my office and we are asked for that from Signature [Requestor] as well as many other providers, title companies, real estate companies on a regular basis day in and day out.
 . . . .
 We provide a 1–page summary that shows the township, county and school district taxes on those properties; and our certification is designed as a 4–year certification. We provide information . . . that is the payment status of each one of those properties, when it was paid, whether it was paid in discount or penalty, and whether or not the property, any of the prior year taxes were liened. We will show that as well.
 H.T. at 23; R.R. at 106a.

11. Section 4.3 of the LTCL was added by the Act of July 7, 2006, P.L. 374.

"public records." [12]

## II. Whether The Trial Court Erred When It Determined That A Township Ordinance Which Established Fees For Tax Records Superseded The Provisions And Requirements Of The RTKL?

Requester next contends that pursuant to Section 1307(b)(1)(i) of the RTKL, 65 P.S. § 67.1307(b)(1)(i), "[f]ees for duplication by photocopying, printing, electronic media or microfilm, copying onto electronic media, transmission by facsimile or other electronic means and other means of duplication shall be established ... by the Office of Open Records, for Commonwealth agencies and local agencies...." [13]

In *State Employees' Retirement System v. Office of Open Records* [14], 10 A.3d 358, 363–64 (Pa.Cmwlth.2010), this Court reviewed Section 1307(b)(1)(i) [15] of the

---

**12.** This Court also rejects Requester's assertion that pursuant to Section 25 of the LTCL, 72 P.S. § 5511.25, the Township may require the Tax Collector to provide his records to the Township thereby placing the Tax Collector's records under the control of the Township making them "public records." Section 25 of the LTCL, 72 P.S. § 5511.25, provides that "[t]he tax collector shall at any time on demand of any taxing district, *exhibit any duplicate* in his possession showing the *uncollected taxes* as of any date." (emphasis added).

Here, Requestor sought the amounts and dates of payment of the taxes by individual taxpayers. Section 25 of the LTCL, 72 P.S. § 5511.25, clearly requires the Tax Collector to display duplicates of *uncollected taxes.* Section 25 of the LTCL does require the Tax Collector to display records of *paid* duplicates as requested by Requestor. Further, Section 25 of the LTCL only requires the Tax Collector to "exhibit" any duplicates in his possession, not to provide a copy of the duplicate.

Second, Requestor cites to another section in Section 25 of the LTCL, 72 P.S. § 5511.25, that "[t]he Tax Collector ... provide ... on a form approved by the Department of Community and Economic Development ... giving the names of taxables, the amount collected from each along with discounts granted or penalties applied, if any, and the total amount of taxes received, discounts granted and penalties applied."

Again, Adenbaum testified, and the trial court found, that the Tax Collector does provide the Township with the required information on the form approved by the Department of Community and Economic Development. However, the form indicated the total amount of taxes received, discounts granted, and penalties applied. *See again* Township's Exhibits 7 and 8 at 1; R.R. at 213a–14a. The form did not contain the names of every taxpayer and the amount collected, which is the detailed information sought by the Requester.

**13.** Also, Section 1307(c) of the RTKL, 65 P.S. § 67.1307(c), provides that "[a]n agency may impose reasonable fees for official certification of copies if the certification is at the behest of the requester and for the purpose of legally verifying the public record."

**14.** In *State Employees' Retirement System,* Tracie Mauriello and the Pittsburgh Post–Gazette (requesters) submitted a request to the State Employees' Retirement System (SERS) and sought the years of service, class of service and total compensation for the last three years of service for the employees listed by requesters. SERS advised requesters that the cost to comply with the request would be $77.00. Requesters appealed to the OOR. The OOR sustained the appeal and concluded that "charging for the time it takes an agency employee to respond to a request during normal business hours is not a proper charge to pass along to a requester." OOR's Final Determination, (Docket No.: AP 2009–0053), January 11, 2010, at 5–6. *State Employees' Retirement System,* 10 A.3d at 360.

On appeal, SERS argued that "the fee it was prepared to charge was for costs it 'necessarily incurred' for the purpose of 'complying with the request' and that the fee was reasonable." *Id.,* 10 A.3d at 361. This Court affirmed the decision of the OOR and held that "SERS cannot charge for creating a record it was not required to create" and that "RTKL does not expressly authorize the charging of labor costs [and as a result] SERS is not permitted to charge a fee for such costs." *Id.,* 10 A.3d at 363.

**15.** Section 1307 of the RTKL provides:

RTKL, 65 P.S. § 67.1307(b)(1)(i), and stated that "the OOR may establish duplication fees for Commonwealth agencies and local agencies." (footnote omitted). However, this is not the situation here.

Here, the Tax Collector, and not the Township, was in possession of the tax records. Critically, Section 4.3 of the LTCL, 72 P.S. § 5511.4c(c)(1), provides:

(c) This section shall not be construed to do any of the following:

(1) *Make a tax collector an "agency" or authorize requests of the tax collector pursuant to the act of June 21, 1957 (P.L. 390, No. 212), referred to as the Right–to–Know Law."* (emphasis added).

(2) Alter or amend any law concerning the confidentiality of tax collection records.

. . . .

(e) *As used in this section, the term "tax collection records" shall mean records to which access is required by a tax collector in order to carry out the duties under this act and which are among the categories of tax collection records that are to be maintained in conformity with disposition and retention schedules and regulations that promulgated by the Local Government Records Committee in*

(b) Duplication.-
(1) Fees for duplication by photocopying, printing from electronic media or microfilm, copying onto electronic media, transmission by facsimile or other electronic means and other means of duplication shall be established:
(i) by the Office of Open records, for Commonwealth agencies and local agencies;
(ii) by each judicial agency; and
(iii) by legislative agency;
(2) The fees must be reasonable and based on prevailing fees for comparable duplication services provided by local business entities.

*accordance with 53 Pa.C.S. Ch. Subch. F.* (relating to records).

As a result, unlike in *State Employees' Retirement System,* the OOR did not have the authority to establish a fee for the duplication of tax records.

### III. Whether The Trial Court Erred When It Considered Requester's Status As A "Profit–Making Business" And The Potential Use Of Those Tax Records To Further His Business Interest?

Last, Requester contends that the trial court abused its discretion because it relied on Requester's profit making motive in violation of the RTKL. Requester asserts that the RTKL expressly prohibits an agency from denying access to records based upon Requestor's motive or intended use of the records.[16]

Specifically, the trial court stated that "Signature [Requester] is requesting the Tax Collector's records from the Township to further its profit making business ... Signature [Requester] is a private commercial entity which requests property tax records from the Tax Collector and provides customers with these records for use at real estate settlements." Opinion of the Trial Court at 5.

(3) Fees for local agencies may reflect regional price differences.

16. Requester states that the trial court's reliance on dicta in *Scranton Times, L.P. v. Scranton Single Tax Office,* 736 A.2d 711 (Pa. Cmwlth.1999) and *Current Status, Inc. v. Hykel,* 778 A.2d 781 (Pa.Cmwlth.2001) "to support a holding that a local agency does not have to provide public records for the commercial benefit of requesters is misplaced." Brief for Richard K. Honaman at 29. "These opinions pre-date the passage of the recently re-enacted RTKL, but their holdings have been essentially codified in the current RTKL. See 65 P.S. § 67.705." Brief for Richard K. Honaman at 29.

In *Commonwealth Ex Rel. Corbett v. Snyder*, 977 A.2d 28, 41 (Pa.Cmwlth.2009), this Court noted:

'An abuse of discretion is not merely an error in judgment.' *Ambrogi v. Reber*, 932 A.2d 969, 974 (Pa.Super.2007), appeal denied, 597 Pa. 725, 952 A.2d 673 (2008). 'Rather an abuse of discretion exists if the trial court renders a judgment that is [plainly] unreasonable, arbitrary or capricious, fails to apply the law, or was motivated by partiality, prejudice, bias or ill will.' *Id.* '*If the record supports the trial court's reasons and factual basis, the court did not abuse its discretion.*' *Id.* In addition, the facts are to be viewed in a light most favorable to the winner at the trial court level .... (emphasis added).

 In the present controversy, the trial court thoroughly reviewed the RTKL, the LTCL and relevant case law. The trial court determined that the Tax Collector was exempt from the provisions of the RTKL and that the Township, as a local agency under the RTKL, was not in possession or control of the tax records sought by Requester. The trial court did not abuse its discretion when it sustained the Township's appeal. This Court is hard pressed to comprehend how the trial court reference to Requester being a private commercial entity, which at most was immaterial, was prejudicial to Requester.[17]

Accordingly, this Court affirms.

### ORDER

AND NOW, this 31st day of January, 2011, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is affirmed.

---

**17.** Assuming that the trial court erred in its observation of Requestor's financial motive, "it is axiomatic that [this Court] will not disturb a judgment, order, or decree on appeal for harmless error." *Campbell v. Department of Environmental Resources*, 39 Pa.Cmwlth. 624, 396 A.2d 870 (1979).