**[J-29A-C-2015]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**


**SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.**


| | | |
|---|---|---|
| DENTAL BENEFIT PROVIDERS, INC. AND UNITEDHEALTHCARE OF PENNSYLVANIA, INC. D/B/A UNITEDHEALTHCARE COMMUNITY PLAN AND HEALTHAMERICA PENNSYLVANIA, INC., D/B/A COVENTRYCARES, | : : : : : : : : : | No. 48 EAP 2014<br><br>Appeal from the Order of the Commonwealth Court entered 2/19/14 at No. 945 CD 2013 reversing the determination entered on 5/7/13 of the Office of Open Records at No. AP2012-2017 |
|         Appellees | : : : | |
|         v. | : : | ARGUED: May 5, 2015 |
| JAMES EISEMAN, JR., AND THE PUBLIC INTEREST LAW CENTER OF PHILADELPHIA, | : : : : | |
|         Appellants | : : : | |
| AETNA BETTER HEALTH INC., HEALTH PARTNERS OF PHILADELPHIA, INC., KEYSTONE MERCY HEALTH PLAN, AND DENTAQUEST, LLC, | : : : : : : | No. 49 EAP 2014<br><br>Appeal from the Order of the Commonwealth Court entered 2/19/14 at No. 957 CD 2013 reversing the determination entered on 5/7/13 of the Office of Open Records at No. AP2012-2017 |
|         Appellees | : : | |
|         v. | : : | |
| JAMES EISEMAN, JR., AND THE PUBLIC INTEREST LAW CENTER OF PHILADELPHIA, | : : : : | ARGUED: May 5, 2015 |
|         Appellants | : : : | |
| DEPARTMENT OF PUBLIC WELFARE, | : : | No. 50 EAP 2014 |
|         Appellee | : : | Appeal from the Order of the Commonwealth Court entered 2/19/14 |
|         v. | : : | at No. 958 CD 2013 reversing the determination entered on 5/7/13 of the |

JAMES EISEMAN, JR., AND THE PUBLIC INTEREST LAW CENTER OF PHILADELPHIA,

    Appellants

: Office of Open Records at No. AP2012-2017
:
:
:
:
: ARGUED: May 5, 2015


**OPINION**


**MR. CHIEF JUSTICE SAYLOR**            **DECIDED: October 27, 2015**


This is the second of companion sets of appeals in which we are asked to evaluate the breadth of the public's statutory right of access to discrete information about the implementation of the Medical Assistance Program.

The general background for these appeals is set forth in this Court's opinion in the related case, *DPW v. Eiseman*, ___ Pa. ___, ___ A.3d ___ (2015), and that context, as well as the conventions utilized there, are incorporated here by reference. The present appeals primarily concern rates of payments made by Subcontractors to providers of dental health services to Medicaid enrollees in the HealthChoices Southeastern Zone from July 1, 2008, through July 30, 2012 (the "Provider Rates").

The pertinent RTKL request lodged by the Public Interest Law Center of Philadelphia ("Requester") sought documents, including contracts, rate schedules, and correspondence in DPW's possession, custody, or control evidencing the Provider Rates. Requester recognized, at least tacitly, that the Law is directed primarily to the disclosure of records "of a Commonwealth agency," 65 P.S. §67.102 (setting for the definition for a "public record"), and that the statutory presumption that records are public ones is directed to records "in the possession of a Commonwealth agency," *id.* §67.305(a). Requester thus contended that, even if the Department did not physically maintain custody of the requested records (since the relevant agreements were

downstream contracts between Subcontractors and dental-health-services providers), DPW should be deemed to maintain constructive possession of them.

In support of this proposition, Requester highlighted a requirement contained within the standard written contract between the Department and managed care organizations designed to ensure DPW's expedient access to information about services ultimately provided using Medicaid funds. Specifically, this ready-access provision is framed as follows:

> all contracts or Subcontracts that cover the provision of medical services to the [MCOs] Members must include . . . [a] requirement that ensures that the Department has ready access to any and all documents and records of transactions pertaining to the provision of services to Recipients.

HealthChoices Physical Health Agreement at 163 (version effective July 1, 2010).

Alternatively -- and to the degree that responsive information was not in DPW's possession, but rather, was contained in records of non-public entities -- Requester invoked a provision of the Law which recasts certain third-party records bearing a requisite connection with the government as public records "of [a Commonwealth] agency." 65 P.S. §67.506(d)(1). *See generally SWB Yankees LLC v. Wintermantel*, 615 Pa. 640, 665, 45 A.3d 1029, 1044 (2012). In this regard, the statute prescribes that:

> [a] public record that is not in the possession of an agency but is in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the agency, and which directly relates to the governmental function and is not exempt under this act, shall be considered a public record of the agency for purposes of this act.

65 P.S. §67.506(d)(1).

First, Requester noted that "implementing the Medicaid program is a governmental function," while positing that payments to providers -- and, hence, the

Provider Rates -- were an integral aspect of such administration. Letter Brief for Requester, *Eiseman v. DPW*, Dkt. No. AP 2012-2017 (Pa. OOR), at 11. Next, Requester set out to address Section 506(d)(1)'s directed focus upon records "in the possession of *a party with whom the agency has contracted*." 65 P.S. §67.506(d)(1) (emphasis added). Given that the Department simply had not contracted with Subcontractors or dental-health-services professionals within Subcontractors' provider networks, Requester advanced the following policy-oriented rationale:

> [I]f MCOs could shield their expenditures of public funds from public scrutiny under the Right-to-Know Law simply by delegating some or all of their functions to subcontractors, it would be trivial for any entity contracting with a public agency to do so. Surely, the Right-to-Know Law and the meaning of "agency possession" therein may not be read so narrowly and must be read to encompass any subcontractor as well as contractor to a government agency.

Letter Brief for Requester, *Eiseman v. DPW*, Dkt. No. AP-2012-2017, at 11-12.

DPW denied the request, citing, *inter alia*, the RTKL exception permitting the withholding of a "record that constitutes or reveals a trade secret or confidential proprietary information," 65 P.S. §67.708(b)(11), along with the Pennsylvania Uniform Trade Secrets Act.[1]

Requesters lodged an appeal in the OOR, and the MCOs and Subcontractors obtained leave to appear as direct-interest participants and submitted position statements accompanied by supportive materials.[2] DBP, *et al.*, succinctly summarized the relevant argument as follows:

---

[1] Act of Feb. 19, 2004, P.L. 143, No. 14 (as amended, 12 Pa.C.S. §§5301-5308).

[2] The third parties in interest have appeared throughout in two groups: the first comprised of Dental Benefits Providers, Inc., United Healthcare of Pennsylvania, d/b/a United Healthcare Community Plan, and HealthAmerica Pennsylvania, Inc., d/b/a (…continued)

> Under [Section 506(d)(1)], agency "possession" is satisfied respecting materials that are actually held by third parties only where: (1) the materials are in the hands of a third party with whom the agency has contracted, and (2) the materials pertain to a governmental function that the third party has contracted to carry out. . . . DPW[, however,] has contracted with the *MCOs* to carry out the HealthChoices program, *not* the dental subcontractors. DPW has no direct contractual relationship with the dental subcontractors. Accordingly, the first essential element is missing such that agency "possession" is not satisfied here. As such, the OOR cannot compel disclosure of any materials in the hands of the dental subcontractors.

Letter of DBP, *et al.*, dated Jan. 14, 2013, in *Eiseman v. DPW*, Dkt. No. AP 2012-2017, at 8 (emphasis in original); *accord* Letter of Aetna, *et al.*, dated January 14, 2013, in *Eiseman*, No. AP 2012-2017, at 9-10.

Based on these submissions, the OOR subsequently issued a final determination granting the request for records in full. Initially, the appeals officer highlighted the public policy underlying the RTKL. *Eiseman v. DPW*, Dkt. No. AP 2012-2017, 2013 WL 1950593, at *2 (Pa. OOR May 7, 2013) (explaining that the Law is "designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials and make public officials accountable for their actions." (quoting *Bowling v. OOR*, 990 A.2d 813, 824 (Pa. Cmwlth. 2010), *aff'd*, 621 Pa. 133, 75 A.3d 453 (2013))). Furthermore, he explained, the RTKL places the burden of proof upon a public body to demonstrate exemptions pertaining to public records. *See* 65 P.S. §67.708(a).

---

(continued…)
CoventryCares (collectively, DBP, *et al.*); the second group has entailed Aetna Better Health Inc., Health Partners of Philadelphia, Inc., and Vista Health Plan, Inc., through Keystone Mercy Health Plan, and DentaQuest, LLC (collectively, "Aetna, *et al.*").

The appeals officer proceeded to discuss Section 506(d)(1) of the RTKL in a subsection of his opinion encaptioned: "The Department is required to obtain records in the possession of the dental subcontractors related to the payment rates paid to dentists." *Eiseman*, Dkt. No. AP 2012-2017, 2013 WL 1950593, at *4. In this regard, the appeals officer pointed to the ready-access provision of the standard agreement between DPW and managed care organizations, apparently equating (without further explanation) the requirement of ready access with a mandate to affirmatively obtain records. *See id.* at 5 ("The fact that the MCOs would . . . hire subcontractors is clearly contemplated by the agreements between the Department and the MCOs, wherein the Department 'has ready access to any and all documents and records of transactions pertaining to the provision of services to Recipients,' including those records in the possession of the dental subcontractors." (quoting HealthChoices Physical Health Agreement at 163)). The analysis by the appeals officer then segued into a crediting of the policy-oriented rationale advanced by Requester:

> The OOR finds that Section 506(d) is applicable to records in the possession of the dental subcontractors. While the Department does not contract directly with the dental subcontractors, the dental subcontractors contract with the MCOs to perform services for the Department. Because the records sought directly relate to a governmental function being performed by the dental subcontractors, these records should be subject to public access. The OOR finds that any other interpretation would frustrate the intent of Section 506(d) by making records showing how public monies are spent unavailable to the public even though they directly relate to a governmental function and a contract with a governmental agency.

*Id.*[3]

---

[3] A substantial portion of the balance of the appeals officer's opinion was dedicated to discussion of the Law's exception for trade secrets, which served as a pillar of DPW's (…continued)

A divided, *en banc* panel of the Commonwealth Court reversed in a published opinion. *See Dental Benefit Providers, Inc. v. Eiseman*, 86 A.3d 932 (Pa. Cmwlth. 2014). Referencing the statutory presumption of openness as to records in an agency's possession, *see* 65 P.S. §67.305(a), the Commonwealth Court majority initially considered whether the requested records were within DPW's possession, custody, or control, such that the presumption might apply in the first instance. *See Eiseman*, 86 A.3d at 936.[4] In this regard, the majority reverted to the definition of "records," for purposes of the Law, which encompasses information that documents a transaction "of an agency" which is "received or retained" in connection with a transaction, business, or activity of the agency. *Id.* at 936-37 (quoting 65 P.S. §67.102).

The Commonwealth Court majority recognized that, for documents to be "of" a Commonwealth agency, they need not necessarily originate with or be created by the agency. *See id.* at 937. Nevertheless, it found that the Department lacks any possession whatsoever of the Provider Rates, a proposition which seems to be otherwise undisputed in this appeal (at least upon any affirmative production of evidence). *See id.*

Further, the majority acknowledged that the intermediate court previously had applied the concept of constructive possession in the RTKL context. *See id.* at 938

---

(continued…)

initial basis for denying the records request. The Commonwealth Court, however, did not address this consideration, and based upon our analysis infra, this aspect is also immaterial to our present decision.

[4] The MCOs and Subcontractors appear to dispute that the term "possession," as it appears in Section 305(a) of the Law, also encompasses custody and control. *Accord Office of Budget v. OOR*, 11 A.3d 618, 622 (Pa. Cmwlth. 2011) ("Had the Legislature wanted to create the presumption that records in an agency's custody and control, but not in its possession, were public records, it would have included those terms in Section 305.").

("We recognize constructive possession under Section 901 as a means of access so agencies cannot frustrate the purposes of the RTKL by placing their records in the hands of third parties to avoid disclosure." (citing, *inter alia*, *Office of the Budget*, 11 A.3d at 622)). The majority nonetheless differed with the position of Requester and the OOR that the ready-access provision of the standard contract between DPW and managed care organizations supported a finding of constructive possession in the present circumstances. Rather, the majority regarded such provision as reflecting only "the mere availability of the records to an agency upon request." *Id.* ("That DPW has the contractual right and ability to request records from a private contractor does not convert private contractor records into records 'of' DPW.").[5]

---

[5] The majority also highlighted that the definition of "Subcontract" in the standard agreement between DPW and managed care organizations exempts "Provider Agreements," such that these "are not considered Subcontracts for the purpose of this Agreement and, unless otherwise specified . . ., are not subject to the provisions governing Subcontracts." HealthChoices Physical Health Agreement at 29-30 (definition of "Subcontract"). The majority reasoned that such "contract language supports DPW's disclaimer of possession and access to Provider Rates." *Eiseman*, 86 A.3d at 938.

The majority, however, failed to appreciate that the noted advance-written-approval and ready-access provisions of the standard agreement are couched in materially different terms – while the advance-written-approval term does indeed pertain to "Subcontracts," *see* HealthChoices Physical Health Agreement at 87, the ready-access term pertains more broadly to "*contracts or* Subcontracts that cover the provision of medical services to the [MCO's] Members," *id.* at 163. *See generally* Brief for Requester at 18 ("The Ready Access requirement applies to 'all *contracts or Subcontracts*,' . . . but the Commonwealth Court's analysis elided the crucial words '*contracts or*.'" (emphasis adjusted)).

Parenthetically, Requester develops that the Commonwealth Court majority also failed to apprehend the standard contract's definition of "Provider Agreement," which simply does not encompass remote agreements between Subcontractors and dental-health-services providers. *See* Brief for Requester at 20. Moreover, Requester observes, were these remote agreements actually "Provider Agreements" under the standard (…continued)

In conjunction with this analysis, the Commonwealth Court majority referenced Section 910 of the RTKL, which tasks an agency receiving a written request for access to a record with "mak[ing] a good faith effort to determine if the record requested is a public record . . . and whether the agency has possession, custody or control[.]" 65 P.S. §67.901. Apparently synthesizing this provision with the Law's definition of a "record," *see id.* §67.102 (defining such term, in relevant part, as information which "documents a transaction or activity of an agency and that is created, received or retained pursuant to the law or in connection with [such] a transaction, business or activity"), the majority discerned that "[t]he litmus test under Section 901 remains whether the records document a transaction of the agency to which the request was directed, not whether they document a transaction of a private contractor." *Eiseman*, 86 A.3d at 938.

Additionally, harkening back to the MCOs' and the Subcontractors' initial position statements before the OOR, the Commonwealth Court majority reasoned:

> [T]he Provider Rates are not "records" of DPW as that term is defined in the RTKL . . .. There is no evidence DPW sought to circumvent the RTKL by placing records of its activities into the hands of a third party. Rather, the Provider Rates are negotiated between Subcontractors and providers, and do not involve DPW. They are not in DPW's possession. Also, there is no indication that they were created or received by DPW, or that they evidence any transaction of DPW. At most, the Provider Rates evince a transaction of Subcontractors of the MCOs, with which DPW has no contractual relationship.

---

(continued…)
contract, they would be subject to a discrete provision of the standard contract – abjectly overlooked by the Commonwealth Court majority – explicitly requiring advance written approval by DPW of Provider Agreements. *See* HealthChoices Physical Health Agreement at 27 (definition of "Provider Agreement"), 119.

*Id.* at 939 (footnote omitted).[6]

The Commonwealth Court majority proceeded to consider Section 506(d)(1)'s expanded concept of "public records" extending to certain records of non-public individuals and entities. From the outset, it agreed with the MCOs and Subcontractors that one of the statute's core elements – namely, the requirement for there to be a contractual relationship between a government agency and the third party whose records are in question, *see* 65 P.S. §67.506(d)(1) – simply was not met. The majority explained that the intermediate court had enforced, and would enforce, such requirement on its terms. *See Eiseman*, 86 A.3d at 939-40 (citing *Honaman v. Lower Merion Twp.*, 13 A.3d 1014, 1022 (Pa. Cmwlth. 2011)).[7]

---

[6] To the extent that the Commonwealth Court's previous decision in *Lukes v. DPW*, 976 A.2d 609 (Pa. Cmwlth. 2009), supported the application of a policy-oriented rationale focused on openness, the majority declined to extend this decision, which arose under the predecessor open-records regime, into the context of the RTKL. *See Eiseman*, 86 A.3d at 941-42.

We have touched upon the *Lukes* decision further in the companion appeals. *See Eiseman*, ___ Pa. at ___, ___ A.3d at ___.

[7] Although the above reasoning would seem dispositive, the intermediate court majority did not conclude its analysis at this juncture. Rather, it proceeded to consider whether Subcontractor records should be made available "through the MCOs' contractual relationship with DPW." *Id.* at 940. The majority, however, did not anchor this line of inquiry to any of the terms of Section 506(d)(1), other than that it proceeded to consider whether there was a direct relationship between a governmental function (here, the administration of the HealthChoices Program), and the Provider Rates. *See id.* at 940-41. Ultimately, the majority found no such direct relationship on these terms:

> There is no question that the quality of the dental services rendered by providers directly relates to the performance of the government function formalized in the DPW/MCO contracts. The same may be true as to the availability of the services and the manner in which the services are delivered. However, the cost of obtaining those services . . . does not

(…continued)

Judge McCullough authored the dissenting opinion, concluding, *inter alia*, that the Subcontractors' agreements with dental-health-services providers should be deemed to be in DPW's possession. *See Eiseman*, 86 A.3d at 943. Construing the Law very liberally, and reasoning that the MCOs contracted with the Subcontractors as DPW's agents, she took the position that "the Subcontractors have *directly contracted* with DPW as principal." *See id.* at 945 (emphasis added). Accordingly, Judge McCullough found that Section 506(d)(1)'s contractual-relationship element was satisfied.[8]

---

(continued…)

> directly relate to the performance of the government function.

*Id.* at 940.

While expressing substantial misgivings with such reasoning and conclusion pertaining to the asserted lack of a direct relationship, *cf. infra* note 8, we decline to consider this line of inquiry further. Instead, we merely observe that Section 506(d)(1) requires *both* possession by "a party with whom the agency has contracted to perform a governmental function" *and* that the requested record "directly relates to the governmental function." 65 P.S. §67.506(d)(1). Thus, and as further discussed below, the statute simply does not serve as a basis for disclosure where the contract element is absent in the first instance. *Accord* Brief for DBP, *et al.*, at 14 ("Because of the conjunctive '*and*' in the statute, if *either* of the two required elements is missing, then the Law will not deem the agency to constructively possess records actually held by a non-governmental third party." (emphasis in original)).

[8] Judge McCullough also took issue with the majority's determination that a direct relationship between the Provider Rates and the administration of the HealthChoices Program was lacking. She developed her point of view on this subject as follows:

> [T]he request for Provider Agreements and Provider Rates falls squarely within the terms of the Subcontractors' contractual duties and explicit governmental undertakings. Via sub-contractual arrangements, the Subcontractors assume DPW's governmental obligation to implement Medicaid and ensure that dental care is available for Medicaid recipients. Pursuant to their governmental and

(…continued)

The present arguments closely align with the presentations before the OOR and the Commonwealth Court. In substance, Requester and its *amici* hew most closely to a policy-oriented position. *See, e.g.*, Brief for Requester at 14 ("Under the RTKL, when an agency channels taxpayer dollars through middlemen in the administration of a public program, the contracts documenting that flow of public funds 'directly relate' to the performance of a governmental function."). In this regard, they invoke the policy of liberal construction, *see Levy v. Senate of Pa.*, 619 Pa. 586, 619, 65 A.3d 361, 381 (2013) (quoting *Allegheny Cnty. Dep't of Admin. Servs. v. A Second Chance, Inc.*, 13 A.3d 1025, 1034 (Pa. Cmwlth. 2011)), as well as the presumption that the General Assembly "intends to favor the public interest as against any private interest," 1 Pa.C.S. §1922(5).

Requester also maintains that disclosure is required per Section 506(d)(1). It characterizes the prerequisite of a direct contract between a government agency and a third-party in possession of salient records as a "cramped interpretation," yielding circumstances in which "any governmental contractor could shield from disclosure – either deliberately or incidentally – otherwise publicly available records[.]" Brief for Requester at 27.

---

(continued…)

> contractual duties, the Subcontractors are not only obligated to secure dental services through Provider Agreements, but are also required to negotiate Provider Rates with the dental providers. On these facts, I would conclude that the Provider Agreements and Provider Rates directly relate to the Subcontractors' performance of a government function. These agreements and rates are indispensably necessary to effectuate Medicaid and represent the very thing the Subcontractors contractually agreed to do for and on behalf of DPW.

*Id.* at 945.

Furthermore, Requester contends that the Commonwealth Court majority's "litmus test" for constructive possession "is without foundation and should be rejected as substantially curbing access to documents pertaining to the conduct of public business." Brief for Requester at 22. Citing *Sapp Roofing Co. v. Sheet Metal Workers' International Association, Local Union No. 12*, 552 Pa. 105, 109, 713 A.2d 627, 629 (1998) (plurality) (determining that payroll records of a private roofing contractor in the custody of a local agency were public records, because they evidenced a disbursement by a governmental unit),[9] Requester urges that the understanding of public records within the possession, custody, or control of an agency cannot be so closely constrained. *See* Brief for Requester at 22 ("Even though such records may be in agencies' possession precisely so the agencies can assess whether contractors are complying with a law, this 'litmus test' will broadly exclude these records from public review."). Requester particularly stresses the "custody or control" aspect, analogizing these terms to custody or control for purposes of civil discovery. *See id.* (citing *Tribune-Review Publ'g Co. v. Westmoreland Cnty. Hous. Auth.*, 574 Pa. 661, 672, 833 A.2d 112, 118 (2003) for the proposition that, in construing the terms "possession, custody or control," in the context of civil discovery, this Court had determined that "the courts of this Commonwealth reject a narrow 'physical possession' test, focusing instead on whether the subpoenaed party has a legal right to custody or control of the documents in question.")).

According to Requester:

---

[9] Although *Sapp Roofing* was a plurality decision, three of the five Justices participating in the decision agreed that the payroll records were public records for purposes of the former open-records law. *See Sapp Roofing*, 552 Pa. at 109, 713 A.2d at 629; *id.* at 112, 713 A.2d at 630 (Zappala, J., concurring).

> [I]f DPW has not been exercising its "Ready Access" power to review contracts setting forth Provider Rates, that would represent a troubling abrogation of its responsibilities to ensure that Pennsylvania's Medicaid program is effective and in compliance with federal and state law. Under the Medicaid Act, "a state must ensure that its state plan incorporates adequate reimbursement rates to enlist a sufficient number of dentists to assure that dental care is available to [Medical Assistance] recipients to the same extent and quality of care as dental care available to the general population in certain geographic areas." *Clark v. Richman*, 339 F. Supp. 2d 631, 643 (M.D. Pa. 2004). The Ready Access requirement is a key tool for DPW to accomplish this objective. . . . If DPW has not been reviewing such records [encompassing the Provider Rates], it has failed to track the flow of billions of dollars in taxpayer funds that were expended for the benefit of the neediest Pennsylvanians.

Brief for Requester at 23-24. Requester also argues that the implication, by the Commonwealth Court majority, that a citizen requesting records should be required to present evidence that an agency is "attempting to play some sort of shell game by shifting these records to a non-governmental body," *Eiseman*, 86 A.3d at 938 (quoting *Office of Budget*, 11 A.3d at 621), improperly shifts the burden of proof to requesters instead of agencies as required by the Law, *see* 65 P.S. §67.708(a)(1), and turns upon an analysis which is entirely absent from the RTKL.

On the other hand, a core proposition of the MCOs and Subcontractors is that Section 506(d)(1) establishes the only appropriate test for access to third-party records which are not in the possession, custody, or control of a Commonwealth agency, and the Commonwealth Court's determination that the element of a contractual relationship between DPW and Subcontractors is lacking is eminently correct. *See* Brief for DBP, *et al.*, at 19 (asserting that Requester's argument "is nothing more than a complaint about how the General Assembly drafted section 506"). The MCOs and Subcontractors deny that the standard agreement between the Department and MCOs permits DPW access

to "sensitive and proprietary contractual rates that are confidentially negotiated between the subcontractors and the dental providers." Brief for DBP, *et al.*, at 17.[10] The MCOs, their subcontractors, and their *amici* also touch upon policy considerations in tension with those developed by Requester. *See, e.g.*, Brief for *Amicus* America's Health Ins. Plans at 4-5 (asserting that "[a]s in the private health insurance marketplace, maintaining the confidentiality of negotiated price terms is critical to realizing the benefits of a competitive Medicaid managed care market" and that "confidential rate terms keep Medicaid costs down"); Brief for *Amicus* Pa. Coalition of Med. Assistance Managed Care Orgs. at 3 ("A reversal of the Commonwealth Court's decisions will cause substantial and widespread harm to Pennsylvania's current system of providing dental care for Medicaid beneficiaries, decreasing quality of care and access to care and increasing the total cost for taxpayers of the Commonwealth.")

DPW, for its part, merely adopts the MCOs' and Subcontractors' arguments.

We deem the issues presented to be matters of statutory construction, over which our review is plenary. Upon consideration, we agree with the MCOs and Subcontractors on the essential points that the Law channels access to third-party records through Section 506(d)(1), and that such provision contemplates an actual contract with a third party in possession of salient records.

---

[10] The MCOs and Subcontractors also endorse the Commonwealth Court's position, in other cases, that "[b]y its plain language, Section 901 describes the actions that an agency is obligated to take when it receives a request for a record; it does not define what records are subject to disclosure under the RTKL." Brief for Aetna, *et al.* at 11 (citing *Office of the Budget*, 11 A.3d at 619-20). We agree. Notably, Section 901's discussion of "possession, custody or control" in no way supplants the initial understanding that it is "public records" which are the subject of disclosure. *See* 65 P.S. §67.901 (prescribing that when an agency receives a records request, it "shall make a good faith effort to determine *if the record requested is a public record . . . and* whether the agency has possession, custody or control" (emphasis added)).

The Commonwealth Court's decision expressly recognized this essential point, *see Eiseman*, 86 A.3d at 939-40, and we will affirm its order upon such basis. It is only because the intermediate court's opinion took several turns with which we either disagree or would consider more closely were it necessary to do so, *see supra* notes 5 and 7, that we are unable to credit the opinion fully.

With regard to records in the possession of third parties, we differ with suggestions from Requester's camp that the General Assembly has provided for the "*maximum* access to financial records and contractor records." Brief of *Amici* Pa. NewsMedia Ass'n & Pa. Freedom of Information Coalition at 6 (emphasis added). Rather, as in *SWB Yankees*, albeit that the policy of liberal access is acknowledged, this Court also appreciates that the General Assembly had tempered such policy with explicit limiting terms delineated in the Law, "presumably on account of the burden, expense, and other impositions attending wholesale disclosure" by non-public entities. *SWB Yankees*, 615 Pa. at 662, 45 A.3d at 1042.

Certainly, Requester and its *amici* have identified salient policy considerations favoring public access to downstream Provider Rates. Nevertheless, there are countervailing factors, including the benefit of cost efficiencies associated with the government's accessing of complex private systems of administering health care. Although given the importance of the discrete subject matter – encompassing the essential provision of health care services as well as the immense associated expense – particularized legislative consideration would seem to be in order relative to the openness or secrecy of third-party records downstream from actual Commonwealth agency contracts, we are left here only to apply the highly generalized principles established under Section 506(d)(1).

We appreciate Requester's concern with the Commonwealth Court's "litmus test" for constructive possession under Section 901 of the Law. Nevertheless, Section 901 explicitly harkens back to the essential concept of a "public record," 65 P.S. §67.901, and the incorporated definition of a "record" does encompass the notion of a "transaction or activity of an agency" to which the intermediate court majority has rightfully afforded meaning, *id.* §67.102. While in light of the policy of liberal construction of the instant remedial statute these terms should be construed broadly, *cf. Sapp Roofing*, 552 Pa. at 109, 713 A.2d at 629, they simply cannot be ignored, since, at bottom, our present task is one of statutory construction, not independent judicial policymaking.

The order of the Commonwealth Court is affirmed, albeit on narrower grounds than those developed in the intermediate court's opinion.


Messrs. Justice Eakin and Baer and Madame Justice Todd join the opinion.

Mr. Justice Stevens files a dissenting opinion.