**Roger BUEHL, Petitioner**

v.

**OFFICE OF OPEN RECORDS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 10, 2010.

Decided Oct. 14, 2010.

Roger Buehl, petitioner, pro se.

Maria G. Macus–Bryan, Asst. Counsel and Suzanne N. Hueston, Chief Counsel, Camp Hill, for intervenor, Pennsylvania Department of Corrections.

BEFORE: PELLEGRINI, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge PELLEGRINI.

Roger Buehl (Buehl) petitions *pro se* for review of a final determination of the Office of Open Records (OOR) granting in part and denying in part his request for records of a private company contracting with the Pennsylvania Department of Corrections (Department) to provide commissary services to inmates. Discerning no error in the OOR's decision, we affirm.

Buehl is an inmate currently incarcerated at the State Correctional Institute (SCI) at Smithfield, a facility operating under the Department's purview. Previously, the Department provided its own commissary services to state prisoners but now contracts with a private company, Keefe Company (Keefe), to provide those services, including the sale of clothing and electronic items to inmates. On November 10, 2009, Buehl filed a request with the Department pursuant to the Right–to–Know Law (RTKL) [1] seeking copies of records showing the actual or wholesale costs Keefe paid for various clothing and electronic items resold to the Department for sale to inmates through the prison commissary as well as records showing the quality of these items.[2] The Department's Agency Open Records Officer (AORO), by letter, denied Buehl's request because those records did not exist. The AORO denial letter also stated that the Department did not have or maintain any records of the costs Keefe paid for the items sold to inmates or any records related to the quality of these items, and under Section 705 of the RTKL,[3] the Department was

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

2. Buehl's right-to-know request specifically sought access to or copies of "all purchase orders, invoices and/or other receipts showing the wholesale or actual costs paid by Keefe Company for items sold to inmates within the [Department] in 2008 and 2009" and "all purchase orders, invoices, receipts or other record [sic] showing quality of items (i.e., single defect to A-grade) resold by Keefe Company to inmates within the [Department] in

2008 and 2009." The request then specified the items for which records were being sought, including televisions, typewriters, and various shoes and clothing items.

3. 65 P.S. § 67.705. That section states:
   When responding to a request for access, an agency shall not be required to create a record which does not currently exist or to compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record.

not required to create a record which did not exist. However, the Department did provide Buehl with a memo indicating the amount Pennsylvania Correctional Industries (PCI) paid for the items sold by Keefe, which was the same price the items were sold to the inmates. The memo also stated that to the best of its knowledge, the Department received only retail grade goods and did not knowingly purchase factory seconds or anything identified as having known defects.

Buehl appealed to the OOR arguing that under Section 506(d) of the RTKL, even if the Department did not physically possess the requested records, they were still considered public records of the Department:

> **(d) Agency possession.—**
>
> (1) A public record that is not in the possession of an agency but is in the possession of a party with whom the agency has contracted **to perform a governmental function on behalf of the agency, and which *directly* relates to the governmental function** and is not exempt under this act, shall be considered a public record of the agency for purposes of this act. (Emphasis added.)

65 P.S. § 67.506(d)(1). According to Buehl, the Department contracted with Keefe to perform the governmental function of providing commissary services to state inmates, and the records he requested directly related to this function making them public records of the Department and subject to disclosure.[4]

The Department supplied the OOR with the sworn affidavit of its AORO affirming that the requested records did not exist within the Department's files. While the Department confirmed that it contracted with Keefe, it maintained that their contract only pertained to providing certain commissary services and selling commissary items at agreed upon prices. The actual cost of the commissary items to Keefe was unknown to the Department and was not addressed in the final contractual agreement. Therefore, the Department argued that the requested information was outside the parameters of the contract and not subject to disclosure.

▮ The OOR issued a final determination denying in part and granting in part Buehl's appeal. It noted that in order for the records of a private contractor, such as Keefe, to be considered public records of the Department under Section 506(d) of the RTKL, the services Keefe performed must represent a governmental function performed on behalf of the Department, and the requested records must be directly related to that governmental function. The OOR determined that providing commissary services to state inmates was a governmental function for purposes of Section 506(d) of the RTKL. As to the records requested from Keefe, the OOR determined that any records pertaining to what Keefe itself paid for the items it resold to the Department were not directly related to the re-sale to inmates. Because

---

4.  Buehl also argued that the purchase orders, invoices and receipts he requested qualified as financial records under the RTKL and, therefore, were subject to public access. Section 102 of the RTKL defines financial records to include any of the following:

> (1) Any account, voucher or contract dealing with:
>> (i) the receipt or disbursement of funds by an agency; or

>> (ii) an agency's acquisition, use or disposal of services, supplies, materials, equipment or property.
>
> (2) The salary or other payments or expenses paid to an officer or employee of an agency, including the name and title of the officer or employee.
>
> (3) A financial audit report. The term does not include work papers underlying an audit.

65 P.S. § 67.102.

these records were beyond the parameters of the contract, they were not accessible under Section 506(d). However, the OOR determined that records pertaining to the quality of the items resold to inmates were directly related to the contract with the Department, within its scope, and accessible. The OOR noted that while the Department provided Buehl with a memo explaining what Keefe's records may or may not contain, this was not the equivalent of having copies of or access to the actual records themselves. Buehl petitioned the OOR for reconsideration of that part of its final determination holding that records showing the actual costs paid by Keefe were not public records, under the RTKL. The OOR denied Buehl's petition and he appealed [5] to this Court.[6]

On appeal, Buehl contends that the OOR applied Section 506(d) of the RTKL in an overly narrow manner by holding that the requested records showing the actual cost Keefe paid for items resold to prisoners were not subject to access because those records were beyond the parameters of the contract the Department had with Keefe. In essence, he claims that because Keefe is performing a governmental function, all of its financial records regarding the commissary items are public records, and there is no factual or legal basis to shield them from public access.

In order for third-party records to be considered public records of the Department under the RTKL, they must be in the possession of the contracting party and must "directly relate to the governmental function." Section 506(d)(1) of the RTKL, 65 P.S. § 67.506(d)(1). Moreover, Section 506(d)(2) goes on to state that "[n]othing in this act shall be construed to require access to any other record of the party in possession of the public record." 65 P.S. § 67.506(d)(2). We addressed the scope of Section 506(d)(1) in *East Stroudsburg University Foundation v. Office of Open Records*, 995 A.2d 496 (Pa.Cmwlth.2010). We emphasized the important limitation the General Assembly placed on public access to contracting party records by the specific language it utilized in Section 506(d):

> The General Assembly also used the term "governmental function" to limit access to only those records in a contractor's possession that relate to that function, not other records that a contractor maintains during the normal scope of business. Access is further restricted to records that "directly" relate to carrying out the governmental function, to avoid access that may relate to the contract but do not relate to its performance. For example, material used in preparation for the bid for the governmental contract would not be subject to access because those records do not directly relate to carrying out the governmental function.

*East Stroudsburg*, 995 A.2d at 504.

We agree with the OOR's determination that records in Keefe's possession relating

5. The Department did not appeal the determination of the OOR that it contracted with Keefe for the performance of a governmental function or the determination that Keefe's records indicating the quality of the items resold to inmates through the state prison commissary were directly related to this governmental function. *See SWB Yankees LLC v. Gretchen Wintermantel*, 999 A.2d 672 (Pa. Cmwlth.2010).

6. "[A] reviewing court, in its appellate jurisdiction, independently reviews the OOR's orders and may substitute its own findings of fact for that of the agency." *Bowling v. Office of Open Records*, 990 A.2d 813, 818 (Pa. Cmwlth.2010). As for the appropriate scope of review, "a court reviewing an appeal from an OOR hearing officer is entitled to the broadest scope of review." *Id.* at 820.

to the costs it paid for commissary items do not directly relate to providing commissary services to inmates. Contrary to Buehl's assertions, Keefe's only contractual obligations to the Department pertain to providing commissary services and re-selling items to inmates at agreed upon prices. As the OOR indicated, what Keefe paid for the items is beyond the parameters of its contract with the Department—it does not directly relate to performing or carrying out this governmental function.

Accordingly, because the those records are not directly related to the Department's contract with Keefe, the OOR properly determined that they were not public records subject to access and its final determination is affirmed.

### ORDER

AND NOW, this 14th day of October, 2010, the Final Determination of the Office of Open Records, dated February 5, 2010, is hereby affirmed.