**DENTAL BENEFIT PROVIDERS, INC.** and UnitedHealthcare of Pennsylvania, Inc. d/b/a UnitedHealthcare Community Plan and HealthAmerica Pennsylvania, Inc., d/b/a Coventry-Cares, Petitioners

v.

James EISEMAN, Jr. and The Public Interest Law Center of Philadelphia, Respondents.

Aetna Better Health Inc., Health Partners of Philadelphia, Inc., Keystone Mercy Health Plan, and DentaQuest, LLC, Petitioners

v.

James Eiseman, Jr., and The Public Interest Law Center of Philadelphia, Respondents.

Department of Public Welfare, Petitioner

v.

James Eiseman, Jr., and The Public Interest Law Center of Philadelphia, Respondents.

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2013.
Decided Feb. 19, 2014.

James Eiseman, Jr. and The Public Interest Law Center of Philadelphia.

Christopher H. Casey, Philadelphia, for intervenors Health Partners of Philadelphia, Inc., Keystone Mercy Health Plan, Aetna Better Health Inc and DentaQuest, LLC.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge SIMPSON.

These consolidated Right–to–Know Law (RTKL)[1] petitions for review implicate multiple issues regarding third-party records. The Office of Open Records (OOR) ordered disclosure of the rates managed care organizations (MCOs) paid to subcontractors, and the rates subcontractors paid to providers of dental services under the Department of Public Welfare's (DPW) administration of the Medicaid program in Southeast Pennsylvania. Although DPW is a party to contracts with the five MCOs that serve Southeast Pennsylvania, DPW does not directly contract with the subcontractors or dental providers whose rates are at issue.

On behalf of third parties, DPW argued the rates are exempt under the Pennsylvania Uniform Trade Secrets Act, 12 Pa.C.S. §§ 5301–5308, (Trade Secrets Act), federal regulations, and RTKL exceptions, including Section 708(b)(11) of the RTKL, 65 P.S. § 67.708(b)(11), which protects confidential proprietary information and trade secrets from disclosure. DPW also asserted as a defense to disclosure a Department of Health (DOH) regulation applica-

Karl S. Myers, Philadelphia, for petitioners HealthAmerica Pennsylvania, Inc., UnitedHealthcare Community Plan, CoventryCares, Dental Benefit Providers, Inc. and UnitedHealthcare of Pennsylvania, Inc.

James Eiseman, Jr. and Benjamin D. Geffen, Philadelphia, for respondents

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

ble to "reimbursement information," 28 Pa.Code § 9.604. The third parties submitted evidence as parties with a direct interest. OOR reasoned the exemptions did not apply because the records evidence disbursements of public funds, and this Court previously held that such information is accessible under the prior Right–to–Know Law, repealed by the current RTKL (Prior Law).[2] Upon review, we reverse.

## I. Background [3]

Pursuant to the RTKL, James Eiseman, Jr. of The Public Interest Law Center of Philadelphia (Requester) requested the following records from DPW, for the period of July 1, 2008 to June 30, 2012:

> contracts, rate schedules and correspondence in DPW's possession, custody, or control that: (a) sets forth the amount for any one or more dental procedure codes that any Medicaid HMO [4] and/or Medicaid Dental Subcontractor pays or has paid to dentists (and/or other providers of dental services) for the provision of dental services to Medicaid recipients in Southeastern Pennsylvania, or (b) otherwise establishes the rate of payment by which any Medicaid HMO and/or Medicaid Dental Subcontractor compensates or has compensated dentists (and/or other providers of dental services) for the provision of dental services to Medicaid recipients in Southeastern Pennsylvania.

Reproduced Record (R.R.) at 21a. Essentially, Requester sought rate information paid by Medicaid MCOs or Medicaid dental subcontractors to dental providers.

The response would show how much of the money DPW pays to Medicaid MCOs is later paid to subcontractors and providers.

DPW denied the request based on the objections of third parties whose information was targeted for disclosure. DPW notified the five MCOs: UnitedHealthcare of Pennsylvania, Inc. d/b/a, United Healthcare Community Plan (United); HealthAmerica Pennsylvania, Inc., d/b/a/ CoventryCares (Coventry); Aetna Better Health, Inc., (Aetna); Health Partners of Philadelphia (Health Partners); Keystone Mercy Health Plan (Keystone); and, two subcontractors of the MCOs, Dental Benefit Providers, Inc. (DBP), and, DentaQuest, LLC (DentaQuest) (collectively, Subcontractors). The MCOs and Subcontractors advised DPW the records are exempt on the following grounds: the Trade Secrets Act; Section 708(b)(11) of the RTKL (confidential proprietary information and trade secrets exception); DOH regulation 28 Pa. Code § 9.604; and, other state and/or federal regulations and/or statutes. Requester appealed to OOR.

Each of the seven third parties in interest asked to participate in the proceedings. Collectively, DBP, United and Coventry comprise the "DBP Group" and Aetna, Health Partners, Keystone and DentaQuest comprise the "Aetna Group."

The DPB Group and the Aetna Group submitted position statements, accompanied by affidavits of the providers and MCOs. Requester also submitted a position statement, without affidavits. OOR did not hold a hearing.

---

**2.** Formerly, Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.9 (repealed by RTKL).

**3.** We incorporate the more detailed explanation of the relationships between DPW and the MCOs and the MCOs and their subcontractors and providers as set forth in *Department of Public Welfare v. Eiseman,* 85 A.3d 1117 (Pa.Cmwlth.2014) (consolidated) (*Eiseman I* ).

**4.** Health maintenance organizations, HMOs, refer to managed care organizations here.

Based on the written submissions, OOR issued a final determination granting the appeal and ordering disclosure. *Eiseman v. Dep't of Pub. Welfare,* OOR Dkt. No. AP–2012–2017, 2013 WL 1950593 (Pa. OOR, filed May 8, 2013). OOR concluded none of the cited exemptions applied. With regard to the Trade Secrets Act, OOR relied upon its decision in *Eiseman v. Department of Public Welfare,* OOR Dkt. No. AP 2011–1098 (Pa. OOR, filed Sept. 17, 2012) (*Eiseman I(OOR)* ).[5] OOR held the Trade Secrets Act does not create a basis for withholding records apart from the trade secrets exception in Section 708(b)(11) of the RTKL. OOR relied on *Lukes v. Department of Public Welfare,* 976 A.2d 609 (Pa.Cmwlth.2009), to conclude a threat of competition cannot suffice to support an exemption. OOR also held the parties failed to establish substantial harm because the rates paid to providers vary based on multiple factors. The DOH regulation did not protect the records, OOR held, because that law applied to agencies other than DPW.

Regarding possession of the records containing the rates, OOR interpreted Section 506(d) of the RTKL (access to third-party records) broadly to reach rates paid by Subcontractors to providers. Recognizing DPW had no contractual relationship with Subcontractors, OOR nevertheless held the records related to a government function the MCOs performed on behalf of DPW.

By ordering disclosure, OOR required DPW to obtain records in possession of contractors and subcontractors. Specifically, OOR held the Requester was not only entitled to records containing rates the MCOs pay to Subcontractors and dentists (MCO Rates), but he was also entitled to records containing rates paid by Subcontractors to providers (Provider Rates). OOR explained the Provider Rates are contemplated by the DPW agreements.

The MCOs and Subcontractors, as direct interest participants, and DPW appealed to this Court[6] in separate actions.[7] These consolidated appeals challenge the same final determination and assert the records are not accessible through the RTKL. The appeals further assert the MCO Rates and the Provider Rates are exempt as confidential proprietary information.

## II. Discussion

■ The DBP Group argues OOR erred when it concluded the Provider Rates (Subcontractors → Providers) are accessible under Section 506(d) of the RTKL, 65 P.S. § 67.506(d) (access to third-party records), when DPW has no contractual relationship with Subcontractors. The DBP Group asserts the MCOs and Subcontractors established the Provider Rates are confidential proprietary information that is not accessible.

The Aetna Group argues OOR erred in holding the records of Subcontractors, which do not have a contract with DPW, are subject to disclosure under Section 506(d) of the RTKL (access to third-party records). The Aetna Group asserts the

---

5. *Eiseman I (OOR)* is on appeal in three different cases consolidated at docket No. 1935 C.D. 2012, which was argued sedately with this case during October 2013 argument.

6. In a RTKL appeal from an OOR final determination involving a Commonwealth agency, this Court may exercise independent, *de novo* review. *Bowling v. Office of Open Records,* —— Pa. ——, 75 A.3d 453 (2013).

7. DBP, United and Coventry (the DBP Group) filed an appeal docketed at 945 C.D. 2013; Aetna, Health Partners, Keystone and DentaQuest (the Aetna Group) filed an appeal docketed to 957 C.D. 2013; and, DPW's appeal is docketed at 958 C.D. 2013. In its brief, DPW notes it does not claim the asserted exemptions itself, and merely serves as a conduit for the records at issue.

evidence established the trade secret/confidential proprietary information exception in Section 708(b)(11) of the RTKL applies because Requester did not refute the extensive submissions regarding the protected nature of the information. In addition, the Aetna Group contends OOR erred in holding that neither the Trade Secrets Act, nor the DOH regulations protect the records at issue.

DPW does not take a position regarding the substantive exemptions, and it incorporated by reference the arguments of the DBP and Aetna Groups. DPW advised it "does not have a dog in this fight." Pet'r DPW's Br. at 7.

Requester counters that this Court's decision in *Lukes* compels disclosure, and its rationale should be applied under the current RTKL. Requester asserts the Provider Rates are paid with public funds that flowed from DPW to MCOs, to Subcontractors, and, ultimately to providers. Requester submits the rates are in DPW's constructive possession, or, alternatively, are accessible under Section 506(d) of the RTKL (access to third-party records). Requester further contends that none of the petitioners met their respective burdens of proving applicable exemptions. Requester also asks this Court to hold the rates are "financial records," regardless of trade secret status.

The RTKL contains a presumption of openness as to any records in an agency's possession. *Bowling v. Office of Open Records*, —— Pa. ——, 75 A.3d 453 (2013). Under the RTKL, records in possession of a Commonwealth agency are presumed to be public unless they are: (1) exempted by Section 708 of the RTKL; (2) protected by a privilege; or (3) exempted "under any other Federal or State law or regulation or judicial order or decree." Section 305 of the RTKL, 65 P.S. § 67.305. For a question of law under the RTKL, our scope of review is plenary. *Dep't of Corr. v. Office of Open Records*, 18 A.3d 429 (Pa.Cmwlth. 2011). As to factual disputes, this Court may exercise functions of a fact-finder, and has the discretion to rely upon the record created below or to create its own. *Bowling*.

DPW is a Commonwealth agency as defined by the RTKL. Section 102 of the RTKL, 65 P.S. § 67.102. A Commonwealth agency bears the burden of proving a record is exempt from disclosure. *Dep't of Transp. v. Office of Open Records (Aris)*, 7 A.3d 329 (Pa.Cmwlth.2010); *see also Jones v. Office of Open Records*, 993 A.2d 339 (Pa.Cmwlth.2010) (Board of Probation and Parole bore burden to prove regulatory exemption).

In this case, the parties dispute whether the Provider Rates (Subcontractors → Providers) are within DPW's actual possession. Notably, DPW disclaims possession of the Provider Rates that appear in contracts between Subcontractors and individual dentists or other providers. Therefore, as an initial matter, we must consider whether the Provider Rates should be analyzed under Section 901 of the RTKL, 65 P.S. § 67.901 (agency shall make good faith effort to determine whether it has possession, custody or control of record) as records "of" DPW, or whether the records are those of a third party, which are only accessible under the current RTKL through Section 506(d) of the RTKL, 65 P.S. § 67.506(d).

### A. Section 901 and Agency Possession

As a first step in evaluating a request, an agency must discern whether requested records are within its possession, custody or control, such that it may be obligated to disclose them. The RTKL defines "records" in pertinent part as follows:

> Information, regardless of physical form or characteristics, that <u>documents a</u>

transaction or activity of an agency **and** that is created, <u>received</u> or retained pursuant to law or <u>in connection with</u> a transaction, business or <u>activity of the agency.</u>

Section 102 of the RTKL, 65 P.S. § 67.102 (emphasis added by underlining and bolding).

This Court consistently construes "documents" when used as a verb in the definition of record to mean "proves, supports, [or] evidences." *See Office of the Governor v. Bari,* 20 A.3d 634, 641 (Pa.Cmwlth. 2011); *Dep't of Admin. Servs./ASCI v. Parsons,* 13 A.3d 1025, 1034–35 (Pa. Cmwlth.2011) *(en banc )* (*ASCI I* ). The preposition "of," as in records "of" an agency, indicates the record's "origin, its owner or possessor, or its creator." *Bari,* 20 A.3d at 643. However, for records to be "of" an agency, they do not need to originate with or be created by the agency. *ASCI I.*

DPW pays each of the MCOs a negotiated rate that pertains to all Medicaid services under the HealthChoices Program, a "Capitation Rate."

The MCOs contract with Subcontractors to carry out the dental portion of the program, for which they pay "MCO Rates." *See Dep't of Pub. Welfare v. Eiseman,* 85 A.3d 1117 (Pa.Cmwlth.2014) (consolidated) (*Eiseman I* ). United subcontracts with DBP, whereas the remaining MCOs contract with DentaQuest. Subcontractors have built sophisticated networks of providers, enabling them to provide services to enrollees in a cost-effective manner. Subcontractors do not directly contract with DPW.

Subcontractors in turn subcontract with providers, including dentists. Significantly, neither the MCOs nor DPW possesses the Provider Rates paid by Subcontractors to dentists.

Depicted in diagram form, the contractual relationship described is:

**DPW (public funds) ⇥ MCOs ⇥ Subcontractor ⇥ Providers.**

Thus, DPW is two contract links removed from providers. Nevertheless, Requester contends the funds flowing from Subcontractors as payments to providers are as public as the funds DPW pays to the MCOs.

The MCO Rates (MCO ⇥ Subcontractors) are protected under Section 708(b)(11) of the RTKL. *See Eiseman I.* In this appeal, Requester seeks both the MCO Rates and the Provider Rates (Subcontractors ⇥ Providers). Because the MCO Rates are analyzed in the companion case, *Eiseman I,* this opinion addresses only the remaining records in dispute: those containing the Provider Rates.

The parties dispute whether the Provider Rates are in DPW's actual or constructive possession (reached directly as agency records under Section 901). They also dispute whether the Provider Rates are only in the possession of third parties (indirectly accessible through Section 506(d)).

There is no evidence DPW has actual possession; accordingly, under *Bowling,* this Court could find that DPW does not have actual possession of the Provider Rates. Nonetheless, Requester asks this Court to draw an inference that constructive possession exists.

### 1. Section 901 and Constructive Possession

Pursuant to the "Standard Contract" with DPW, all subcontracts of MCOs are subject to DPW approval. Further, the Standard Contract requires all subcontracts to include a requirement that ensures DPW has ready access to "any and all documents and records of transactions *pertaining to the provision of services* to [Medicaid] Recipients." R.R. at 233a–234a

(emphasis added). Based on this provision, Requester contends that we may presume DPW has constructive possession of the Provider Rates.

Specifically, the Standard Contract requires MCOs to submit all subcontracts between MCOs and any entity to which they delegate Medicaid responsibilities, including dental services, for "advance written approval." R.R. at 766a. Importantly, the Standard Contract defines "subcontracts" to "*exempt from this definition ... Provider Agreements,* which are not considered Subcontracts for the purpose of this Agreement and, unless otherwise specified herein, are not subject to the provisions governing Subcontracts." R.R. at 708a–709a (emphasis added). Thus, the contract language supports DPW's disclaimer of possession and access to Provider Rates.

Constructive possession focuses on an agency's access to a record. The analysis emphasizes the statutory language in Section 901 of the RTKL that mandates an agency "determine whether [it] has possession, custody or control of the identified record." 65 P.S. § 67.901. We recognize constructive possession under Section 901 as a means of access so agencies cannot frustrate the purposes of the RTKL by placing their records in the hands of third parties to avoid disclosure. *See Barkeyville Borough v. Stearns,* 35 A.3d 91 (Pa. Cmwlth.2012); *Office of the Budget v. Office of Open Records,* 11 A.3d 618 (Pa. Cmwlth.2011).

However, this Court does not infer constructive possession from the mere availability of the records to an agency upon request. *Office of the Budget* (construing "control" narrowly as to records of a private contractor). The litmus test under Section 901 remains whether the records document a transaction of the agency to which the request was directed, not whether they document a transaction of a private contractor. This Court explained: "Similarly, while [the Office of the] Budget has the right to audit these payroll records, there is no evidence that they have ever been in Budget's possession or that Budget is attempting to play some sort of shell game by shifting these records to a nongovernmental body." *Office of the Budget,* 11 A.3d at 621.

That DPW has the contractual right and ability to request records from a private contractor does not convert private contractor records into records "of" DPW. *Id.* Further, because the Standard Contract exempts Provider Agreements from DPW approval, DPW does not "control" records containing Provider Rates.

This Court recently re-emphasized the importance of agency possession in the context of a private contractor's records in *West Chester University of Pennsylvania v. Browne,* 71 A.3d 1064 (Pa.Cmwlth.2013).

In *Browne,* the requester sought the benefits plan offered by private contractors of a university. The university argued the contractor's benefits plan did not constitute a "record" of the university. The university then argued that even if the benefits plan was a record, it was not a public record pursuant to Section 506(d) (access to third-party records). OOR held the records directly related to a governmental function and ordered disclosure.

On appeal, this Court determined the benefits plan was not created in connection with the private contractor performing a governmental function for the university. *Id.* The benefits plan related to the relationship between the contractor and its employees, not between the contractor and the university. The contract between the university and the contractor did not require or provide for a benefits plan.

Similarly, here the Provider Rates are not "records" of DPW as that term is defined in the RTKL, quoted above. There is no evidence DPW sought to circumvent the RTKL by placing records of its activities into the hands of a third party. Rather, the Provider Rates are negotiated between Subcontractors and providers, and do not involve DPW. They are not in DPW's possession.[8] Also, there is no indication that they were created or received by DPW, or that they evidence any transaction of DPW. At most, the Provider Rates evince a transaction of Subcontractors of the MCOs, with which DPW has no contractual relationship.

Because the Provider Rates do not evidence any transaction of DPW, they are not "records" of DPW. To discern accessibility of records of third parties in the possession of those parties, we analyze Section 506(d) of the RTKL. *See SWB Yankees, LLC v. Wintermantel,* 615 Pa. 640, 45 A.3d 1029 (2012).

### 2. Section 506(d) and Third Party Records

 Under the current RTKL, to reach records outside an agency's possession the following two elements must be met: (1) the third party performs a governmental function on behalf of the agency; and (2) the information sought directly relates to that function. *Allegheny Cnty. Dep't of Admin. Servs./A Second Chance Inc. v. Parsons,* 61 A.3d 336 (Pa.Cmwlth. 2013) (*ASCI II*). Accordingly, non-exempt records of a third party may be subject to disclosure, provided the third party in possession has a contract with the agency to perform a governmental function, and the information directly relates to the performance of that function. *Id.*

Section 506(d)(1), with emphasis added, provides:

A public record that is not in the possession of an agency but is *in possession of a party with whom the agency has contracted* to perform a governmental function on behalf of the agency, and which *directly relates to the governmental function* and is not exempt under this act, shall be considered a public record of the agency for purposes of this act.

65 P.S. § 67.506(d)(1).

OOR concluded the Provider Rates are accessible under Section 506(d) without first finding that both prerequisites of access are met.

### a. Governmental Function Pursuant to Contract

"Section 506(d)(1) ... recasts certain third-party records bearing the requisite connection to government as public records 'of the [government] agency'...." *SWB Yankees,* 615 Pa. at 665, 45 A.3d at 1044. Thus, "records" of a third party may qualify as "records" under the RTKL when they document or evidence an activity of an agency that is performed by a third party pursuant to a contract. That activity or service has a connection to government because it is a function generally performed by that agency, and is not ancillary to the agency's functions. *Id.*

None of the petitioners here contests that the administration of the HealthChoices Program constitutes a government function. However, that does not end the inquiry. The government function must be performed pursuant to a contract with a government agency.

Here, the parties to the contract with a government agency are DPW and an

---

8. During oral argument, counsel for the MCOs represented the MCOs also do not have possession of the Provider Rates.

MCO. The third party in possession of the records containing Provider Rates, a Subcontractor, has no contractual relationship with DPW. This Court requires a contractual relationship between a third party and an agency to access third-party records. *See Honaman v. Lower Merion Twp.*, 13 A.3d 1014 (Pa.Cmwlth.2011).

As there is no contract between DPW and Subcontractors, the only way to reach the Provider Rates is through the MCOs' contractual relationship with DPW. Thus, we consider whether records containing the Provider Rates directly relate to the government function the MCOs provide to DPW.

### b. Direct Relationship

The information that is the subject of the request must "directly relate" to the performance of the government function. For the "directly relates" prong, this Court considers whether the Provider Rates "directly relate" to performance of the dental services. *See ASCI II; Giurintano v. Dep't of Gen. Servs. (DGS)*, 20 A.3d 613 (Pa.Cmwlth.2011).

In this case, the MCOs perform a government function. To perform that function, the MCOs enter agreements with Subcontractors and providers. The issue is whether the Provider Rates "directly relate" to how the MCOs perform the government function.

This Court construed "directly relates" in a number of cases involving Section 506(d). *See ASC II*, 61 A.3d 336 (Pa. Cmwlth.2013) (*en banc*) (while social services performed by contractor fulfill government function, contractor employee information does not directly relate to performing the services under the contract); *Giurintano* (holding subcontracts for interpretation services with contractors who are not selected are not directly related as there is no contract

performance); *Buehl v. Office of Open Records*, 6 A.3d 27 (Pa.Cmwlth.2010). Summarizing the holdings in these cases, to satisfy the "directly relates" prong, the records must relate to the *performance* of the government function.

For example, in *Buehl*, this Court explained that to qualify as "directly related" under Section 506(d), information must relate to performance under the contract, rather than relate to the contract in some other way. The requester in *Buehl* sought the cost of commissary items purchased by the private party who contracted with the Department of Corrections to provide commissary services. This Court held that operating a commissary at a prison qualifies as a governmental function. Significant for current purposes, however, the Court held that the cost the private contractor paid to acquire the goods to be resold at the commissary did not "directly relate" to the contractors' performance of operating the commissary. *Buehl*, 6 A.3d at 31 ("what [the contractor] paid for the items is beyond the parameters of its contract with the Department—it does not directly relate to performing or carrying out this governmental function."). Therefore, the requester was not entitled to learn the costs the private contractor paid to purchase goods for the agency.

There is no question that the quality of the dental services rendered by providers directly relates to the performance of the government function formalized in the DPW/MCO contracts. The same may be true as to the availability of the services and the manner in which the services are delivered. However, the cost of obtaining those services, like the cost of acquiring goods for resale in *Buehl*, does not directly relate to the performance of the government function.

By way of review, OOR erred when it failed to analyze whether the Provider

Rates were in the possession of an entity which had a contract with DPW. In addition, OOR erred when it failed to follow recent cases and analyze whether the Provider Rates, which reflect the cost of acquiring services rather than the quality or delivery of the services, "directly relate" to the *performance* of a contract with DPW.

We follow *Buehl* to hold the Provider Rates do not "directly relate" to performing the government function of administering the HealthChoices Program. Therefore, the Provider Rates are not accessible under Section 506(d) of the RTKL, and DPW has no obligation to obtain them.

### B. *Lukes* and Third–Party Records

Ultimately, OOR determined the Provider Rates are subject to disclosure because payments to providers are made with public funds. OOR relied on its determination in *Eiseman I (OOR)* and this Court's decision in *Lukes* to conclude the Provider Rates remain records of DPW because the payments represent funds received from DPW.

In *Lukes*, this Court determined records were accessible under the Prior Law if they were maintained by an agency, broadly construing "maintain" in a now-repealed provision to encompass records within an agency's purported control. In so doing, the *Lukes* Court reasoned that contracts between HMOs and providers are maintained by DPW because such records were within the agency's constructive control, albeit not its physical possession.

By its reliance on *Lukes*, OOR revived a rationale for reaching records based on now-repealed language that has been replaced with express language limiting access to third-party records in Section 506(d).

However, in interpreting the current RTKL, this Court explicitly rejects *Lukes. See In re Silberstein*, 11 A.3d 629 (Pa.Cmwlth.2011) (*Lukes* does not control interpretation of current RTKL; communications on commissioner's personal computer are not records "of" township); *Office of the Budget*, (payroll records of third party performing work on contract unrelated to government function and not within agency's possession are not agency records); *see also Honaman* (distinguishing *Lukes;* records of tax collector are not records of agency, and are not reached under current RTKL because there is no contract between tax collector and agency).

Thus, in *Office of the Budget*, the requester sought the certified payroll records of a contractor that received funds from a program administered by the Office of the Budget. Although OOR recognized that the contractor did not perform a government function on behalf of the agency, it reasoned the payroll records remained accessible because the contractor needed to make such records available for auditing compliance. Accordingly, OOR held the contractor's payroll records were within the Office of the Budget's control because that agency maintained the right to review them. To support its decision, OOR relied on *Lukes*. On appeal, this Court rejected this approach because it disregarded the current statutory language.

In *Office of the Budget*, this Court explained that unlike the Prior Law, where the statutory language was ambiguous as to the degree of access to records outside an agency's possession, the current RTKL specifies a test requiring two elements be met. Specifically, this Court stated:

> Moreover, unlike in *Lukes*, this Court is not free to consider factors beyond the statutory language because the current RTKL is not ambiguous on this point, as discussed above. To adopt the OOR's reasoning would mean that records of a

private company, not in the possession of a government agency and not related to a contract to perform a governmental function, are disclosable to the public if any government agency has a legal right to review those records. Such interpretation would greatly broaden the scope of the RTKL beyond its explicit language.

*Office of the Budget,* 11 A.3d at 623.

The holding in *Lukes,* does not control. This Court's reasoning in *Lukes* was based on the use of public funds rather than on the statutory language that dictates the result now. As this Court repeatedly rejected *Lukes* as to its broad agency possession rationale, OOR erred in relying on it here.

## C. Public Nature of Records and Independent Exemptions

The MCOs and Subcontractors treat rate information as confidential information, and they specify the protected nature of the information in their contracts. In that manner, the MCO Rates and the Provider Rates are similar.

Requester asserts the Provider Rates are "financial records" that are public by definition,[9] based upon the reasoning in *Lukes.* However, in rejecting *Lukes'* broad reach, this Court concludes the public's right to know the amount of the funds spent ends before reaching private contractors who have no contract with the government. *Office of the Budget.*

Further, the Provider Rates are not public as "financial records" because they

do not represent payments by an agency (DPW). *See Eiseman I,* 85 A.3d at 1125–27.[10] Rather, Provider Rates represent payments by Subcontractors.

Because we hold Provider Rates are not accessible under Section 506(d), we need not address the independent statutory and regulatory exemptions asserted to protect them.

## III. Conclusion

Pursuant to *Eiseman I,* the MCO Rates (MCO → Subcontractors) are exempt.

The Provider Rates (Subcontractors → Providers) are not accessible as records "of" DPW under Section 901 of the RTKL because they are not in the actual or constructive possession of DPW.

Further, as to third party records, DPW has no direct contractual relationship with Subcontractors, as is necessary to reach the records containing the Provider Rates through Section 506(d). When OOR ignored the lack of a contractual relationship, it committed an error of law. Further, under the only relevant contract involving a government agency, between DPW and an MCO, there is no direct relationship between the services the MCOs perform for DPW and the downstream Provider Rates. This is because case law addressing the "directly relates" prong evaluates performance of the services, not the price to acquire the services.

Therefore, we reverse OOR's final determination ordering disclosure, and we hold the MCO Rates are exempt and the Pro-

---

9. In pertinent part, "financial records" are defined in Section 102 of the RTKL as "any account, voucher, or contract dealing with: (i) the receipt or disbursement of funds by an agency; or (ii) an agency's acquisition, use or disposal of services, supplies, materials, equipment or property." 65 P.S. § 67.102.

10. Since Requester argued the Provider Rates qualify as "financial records," OOR committed legal error by failing to analyze the Trade Secrets Act as an independent separate statutory exemption. The Trade Secrets Act is a state law that shall take precedence over other provisions in the RTKL. Section 306 of the RTKL, 65 P.S. § 67.306.

vider Rates are not accessible through Section 506(d) of the RTKL.

## ORDER

AND NOW, this 19th day of February, 2014, based on the existing record, the final determination of the Office of Open Records is **REVERSED.**

DISSENTING OPINION BY Judge McCULLOUGH.

I respectfully dissent. For the reasons stated in the dissenting portion of my opinion in *Department of Public Welfare v. Eiseman,* 85 A.3d 1117 (Pa.Cmwlth.2014) (McCullough, J. concurring and dissenting), I would conclude that the Managed Care Organization (MCO) Rates[1] should be disclosed. Because my analysis in *Eiseman* is equally applicable to Provider Rates, I would conclude that these rates should also be disclosed. The only remaining issue in this case is whether the Provider Agreements are in the possession of the Department of Public Welfare (DPW) under section 506(d)(1) of the Right–To–Know Law (RTKL).[2] Unlike the Majority, I would conclude that they are.

The facts relevant to our inquiry can be summarized as follows. To effectuate and pay for the dental care aspect of Medicaid, DPW enters into contracts with MCOs; the MCOs, on behalf of DPW, then enter into contracts with various business entities (Subcontractors); and the Subcontractors enter into contracts with the Providers. The contracts between the Subcontractors and the Providers, "Provider Agreements," contain the payment rates, "Provider Rates," that a person/entity receives for rendering dental services to Medicaid beneficiaries.

In pertinent part, section 506(d)(1) of the RTKL states:

A public record that is not in the possession of an agency but is in possession of a party with whom the agency has contracted to perform a governmental function on behalf of the agency, **and** which directly relates to the governmental function . . . shall be considered a public record of the agency for purposes of this act.

65 P.S. § 67.506(d)(1) (emphasis added).

The Majority concludes that this two-part test is not met—first because "the third party in possession of the records containing Provider Rates, a Subcontractor, has no contractual relationship with DPW." (Maj. op. at 940.) Second, the Majority concludes that the rate to be paid from public funds for dental services "do not 'directly relate' to performing the government function of administering [Medicaid]." *Id.* at 941. I disagree with both propositions.

Initially, no one disputes, and the Majority agrees, that the Provider Agreements are in the physical possession of the Subcontractors and that the administration and implementation of the dental care aspect of Medicaid is a "government function." Therefore, in order for the Provider Agreements to be deemed the public records of DPW under section 506(d)(1), the following must occur: (1) the Subcontractors must have "contracted" with DPW to perform a government function; and (2) the Provider Agreements must "directly relate" to the administration or implemen-

---

1. As discussed in *Eiseman* and simplified and charted by the Majority: **DPW → MCOs (MCO Rates) → Subcontractors → Providers (Provider Rates).** The "→" symbol denotes a contractual agreement, with their being a total of three different contracts. The rates listed in the "( )" represent the rates that the parties negotiated for in the relevant contract.

2. Act of February 14, 2008, P.L. 6, 65 P.S. § 67.506(d)(1).

tation of dental care for Medicaid beneficiaries.

"[C]ourts should liberally construe the RTKL to effectuate its purpose of promoting access to official government information in order to prohibit secrets, scrutinize actions of public officials, and make public officials accountable for their actions." *Levy v. Senate of Pennsylvania,* — Pa. —, —, 65 A.3d 361, 381 (2013). The RTKL does not define "contract" and consequently, this term must be construed according to its legal meaning. *See Pantuso Motors, Inc. v. Corestates Bank, N.A.,* 568 Pa. 601, 608, 798 A.2d 1277, 1281 (2002) ("Terms that have acquired specialized meaning, however, are to be interpreted according to such meaning.").

Here, the HealthChoices Agreement between DPW and the MCOs states that the MCOs are obligated to establish and maintain a provider network. (R.R. at 915a.) Specifically, the MCOs are "required to have written Provider Agreements with a sufficient number of [p]roviders to ensure [m]ember access to all medically necessary services covered by [Medicaid]." *Id.* at 784a. Under the HealthChoices Agreement, the MCOs do not have the authority to independently bind DPW through contractual arrangements with third parties. *Id.* at 714a. Although the HealthChoices Agreement permits the MCOs to subcontract their duty to obtain Provider Agreements to Subcontractors, these subcontracts are not valid unless they receive advance written approval from DPW. *Id.* at 865a–66a.

When an agent contracts on behalf of a principal, "the general rule [is] that where there is a disclosed principal, known as such at the inception of the transaction, the principal alone is liable for a breach of the contract." *Levy v. Conly,* 340 Pa. 332, 336, 17 A.2d 382, 383 (1941). Even when an agent lacks apparent authority and is not authorized to conduct a transaction, if a principal approves or ratifies the contractual agreement of an unauthorized agent and a third party, the contract is valid and the principal is held liable upon the contract to the third party. *Todd v. Skelly,* 384 Pa. 423, 427, 120 A.2d 906, 909 (1956); 1 P.L.E. § 101. In other words, the principal's actions in ratifying or approving the contract replaces the agent's unauthorized behavior and the principal becomes the main party to the contract with the third party. *See* Restatement (Third) of Agency § 4.02 cmt. b. (2005) ("Ratification creates claims not otherwise present, giving the principal and the third party enforceable rights against each other. . . ."); *Sheppard v. Aerospatiale, Aeritalia,* 165 F.R.D. 449, 452 (E.D.Pa.1996) ("[G]eneral agency law supports the proposition that ratification will bind a principal").

As explained in my dissenting opinion in *Eiseman,* DPW and the MCOs are in an agency relationship, with DPW acting as the principal and the MCOs acting as the agents. (Dissenting op. at 1134, quoting *Lukes v. Department of Public Welfare,* 976 A.2d 609, 623–24 (Pa.Cmwlth.2009) ("Applying agency principals to the instant matter, we believe the Provider Agreements at issue are the product of the agency relationship between DPW and the [MCO]. The HealthChoices Agreement constitutes a manifestation by DPW that the [MCO] shall administer the HealthChoices Program and the acceptance of the undertaking by the [MCO].")). In this case, DPW is the party principal to the subcontracts between the MCOs and the third party Subcontractors. The MCOs lack authority to enter into subcontracts with the Subcontractors, and the only way in which the subcontracts can become valid and enforceable under the HealthChoices Agreement is if DPW ratifies or approves

the subcontracts as the principal. Therefore, because the Subcontractors have directly contracted with DPW as principal and are in possession of the Provider Agreements ("in possession of a party with whom the agency has contracted"), I would conclude that DPW possesses "public records" for purposes of section 506(d)(1) of the RTKL.

Moreover, as used in the RTKL, the term "governmental function" is materially ambiguous; yet, it should be construed generally "to connote an act of delegation of some substantial facet of the agency's role and responsibilities." *SWB Yankees, LLC v. Wintermantel/The Scranton Times Tribune*, 615 Pa. 640, 45 A.3d 1029, 1041 and 1043 (2012). So long as the requested documents directly relate to the governmental function that is contracted out to the third party, the records are considered to be in the agency's possession under the RTKL. 65 P.S. § 67.506(d)(1).

In this case, the request for Provider Agreements and Provider Rates falls squarely within the terms of the Subcontractors' contractual duties and explicit governmental undertakings. Via sub-contractual arrangements, the Subcontractors assume DPW's governmental obligation to implement Medicaid and ensure that dental care is available for Medicaid recipients. Pursuant to their governmental and contractual duties, the Subcontractors are not only obligated to secure dental services through Provider Agreements, but are also required to negotiate Provider Rates with the dental providers. On these facts, I would conclude that the Provider Agreements and Provider Rates directly relate to the Subcontractors' performance of a government function. These agreements and rates are indispensably necessary to effectuate Medicaid and represent the very thing the Subcontractors contractually agreed to do for and on behalf of DPW.

For these reasons, I would conclude that the Provider Agreements are in the possession of a government agency for purposes of section 506(d)(1) of the RTKL. Accordingly, I dissent.